IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES TOYER, | ) | CASE NO. 3:15-cv-1990 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| NEIL TURNER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.    Introduction

Currently before the court is the petition of Charles Toyer, Ohio Inmate #A668904, for a writ of habeas corpus under 28 U.S.C. § 2254.[1]  Respondent has filed a motion to dismiss the petition.[2]  The matter was initially referred for report and recommendation to Magistrate Judge Greg White, who has since retired.  Subsequently, by minute order entered on March 29, 2016 – under the authority of General Order 2016-3 – the matter was referred to the undersigned for report and recommendation.

Toyer is currently incarcerated at the North Central Correctional Complex in Marion Ohio pursuant to a judgment entry issued by the Lucas County, Ohio, Court of Common Pleas on September 26, 2012 on Turner's conviction for murder.[3]  For the reasons set forth below, it is recommended that the petition be dismissed with prejudice.

---

[1] ECF Doc. No. 1
[2] ECF Doc. No. 6
[3] ECF Doc. No. 6-1 at Ex. 11

II.     **Relevant Factual Background**

In reviewing the petition to determine, pursuant to subsection (2), whether the decision was based on an unreasonable determination of facts, the factual findings made by the state court are presumed to be correct.  *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); § 2254(e)(1).  The petitioner may rebut the presumption of correctness only with clear and convincing evidence. *Id.*; *Warren v. Smith,* 161 F.3d 358, 360-361 (6th Cir. Mich. 1998).  The Ohio Court of Appeals for the Sixth Appellate District, set forth the following facts on direct appeal:

> {¶6}  A summary of the testimony presented at trial is as follows. On March 11, 2012, Tiffany Wilborn resided with appellant, her five-year old, and their infant daughter in Toledo, Lucas County, Ohio.  On that date, Wilborn and her sister, Natiqua Triplett, with the children, went to a child's birthday party.  Wilborn arrived back at the apartment at approximately 7:00 to 7:30 p.m. Appellant arrived home between 10:00 and 11:00 p.m. and the two began arguing about his whereabouts.

> {¶7}  During his interview with police, appellant stated that the two were arguing in the kitchen and that Wilborn had a steak knife, ran outside and threatened to flatten the tires of the vehicle that appellant drove (but was owned and registered to Wilborn).  They chased each other around the cars in the back parking lot and wound up back in the kitchen. Appellant stated that he grabbed a knife in order to try and get her to back away.  Appellant claimed that he did not know exactly what happened but that Wilborn charged him and he accidentally stabbed her.

> {¶8}  Appellant was questioned by police about why after Wilborn was stabbed, instead of calling 911, he first called a friend.  Further, when he did call 911 he told the operator that Wilborn stabbed herself.  Appellant stated that he said she stabbed herself because he was afraid of going to jail.  He maintained that Wilborn stabbed herself until the police interview.

> {¶9}  The deputy coroner testified regarding her autopsy report which listed that the cause of Wilborn's death as a stab wound to the chest and that the manner of death was homicide.  The coroner concluded that a homicide had taken place due to the trajectory or wound path.  The wound went through the skin, muscle, the right and left ventricles of the heart and ended approximately one inch from the spine.  The coroner surmised that Wilborn would not have plunged into the knife because she would have likely backed away from it or it would have glanced off or been moved out of appellant's hand.  The coroner further noted that based on

2

the contemporaneous cuts and bruises on Wilborn's body, she had been involved in an altercation.

{¶10}  A neighbor testified that on multiple prior occasions she heard arguing at Wilborn's and appellant's apartment and recognized the victim's voice.  On the night of the stabbing, she heard the victim yelling "help, he's going to kill me"; she remained inside her home to safeguard her young children.  Another neighbor testified that appellant walked up to him and another neighbor and said that the victim stabbed herself.

{¶11}  Natiqua Triplett presented general background testimony at the beginning of the state's case and later testified regarding the prior acts of domestic violence.  Triplett testified that in January 2011, she was spending the night at appellant's and Wilborn's apartment when the two became involved in an altercation.  Triplett stated that they went into Wilborn's daughter's room and closed the door.  Triplett heard Wilborn tell appellant to get off of her and that she could not breathe.  At that point, Triplett entered the room and observed appellant on top of Wilborn who was laying face-down on the floor.  He had his arm on her neck. Appellant eventually got up and left the apartment.

{¶12}  Triplett next testified regarding an incident in the spring of 2011, when the two got into an argument.  They argued from the kitchen to the bedroom with appellant pushing her down multiple times on the way.  Once in the bedroom, Triplett stated that she saw appellant choking Wilborn up against the wall for "20 seconds" while her face was turning red and her eyes were tearing.  Triplett stated that she wanted to tell her father about the incidents she observed but that Wilborn told her not to.  During cross-examination she acknowledged that Wilborn neither called 911 nor went to the hospital following the incidents.

{¶13}  Following Triplett's testimony, the trial court instructed the jury as follows:

> You just heard evidence regarding the commission of other acts by this defendant.
>
> This evidence was received only for a very limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with the purported character.
>
> If you find that the evidence of these other acts is true and that the defendant actually committed these other acts, you may consider that evidence only for the limited purpose of deciding whether it proves the absence of mistake or accident or as to the defendant's motive regarding the commission of the offense that he is charged with as to this trial.

3

You may not consider this evidence as to the testimony you just heard for any other purpose.

{¶14}  Appellant presented evidence from his grandmother, Yolanda Cranon, who testified that Wilborn left her anti-depressant medication at Cranon's home. She also stated that she was not concerned about appellant being violent with Wilborn.

{¶15}  Regan Burroughs, appellant's long-time friend, testified that she had been in frequent telephone communication with appellant on the date of Wilborn's death.  According to Burroughs, appellant wanted her to pick him up because Wilborn was intoxicated and "yelling."  Burroughs also stated that she heard Wilborn threaten to slash tires and that appellant stated that she was trying to cut and mace him.  Minutes later, appellant called her and said that Wilborn cut herself and was bleeding; he asked Burroughs to call 911.  She was not able to because she did not know the street address.

{¶16}  Burroughs testified that after the stabbing, she went to the apartment to get clothes for the children and some of appellant's belongings.  She stated that she observed a Grey Goose vodka bottle on the bed and a container of mace on the floor.  Photographs of the items were admitted into evidence.  Burroughs admitted that she never told the police what she heard that night.

{¶17}  Neighbor Patrick Bertin testified that appellant asked Wilborn to leave the house after their argument escalated.  She left with the infant but came back, left, and came back again.  Eventually, appellant came out of the apartment and, according to Bertin, took the infant out of the car and said: "You're not leaving with my baby."  The baby was placed inside and the two came back out and were engaged in a physical altercation.  Bertin said that Wilborn was very aggressive and that appellant was trying to get away from her.

{¶18}  According to Bertin, the two went back into the apartment and the argument got "louder and louder."  Bertin stated that he next heard a scream and then someone saying "Oh my God, * * * oh my baby, Tiffany, * * *.  Please help, call 911."

{¶19}  Bertin was cross-examined about his statement to police.  He denied saying that Wilborn left but returned because she did not want to leave the newborn with appellant.  He also denied failing to mention that Wilborn was the aggressor.  Bertin also admitted that he told Wilborn's brother that he wished she had not returned to get her daughter and that appellant looked "possessed" that night.

4

{¶20}  Following the close of testimony, the parties engaged in extensive
discussions regarding the applicable jury instructions.  Appellant's counsel
requested that the jury be instructed on accident, reckless homicide, and negligent
homicide.  After debating the applicable mens rea or lack thereof to warrant the
various instructions, as well as the court's finding that the evidence did not
support the lesser included offenses, the court instructed the jury on accident as
follows:

> The defendant denies that [he] committed an unlawful act and says
> that the result was accidental.
>
> An accidental result is one that occurs unintentionally and without
> any design or purpose to bring it about.
>
> An accident is a mere physical happening or event out of the usual
> order of things, and is not reasonably anticipated or foreseen as a
> natural or probable result of a lawful act.

{¶21}  Following jury deliberations, appellant was found guilty of murder and
sentenced to 15 years to life imprisonment.[4]

## III.    Relevant State Procedural History

### A.    State Conviction

The January 2012 term of the Lucas County Grand Jury indicted Toyer on one count of

murder in violation of Ohio Revised Code § 2903.02(B) and §2929.02, and one count of

voluntary manslaughter in violation of Ohio Revised Code § 2903.03.[5]  Toyer was arraigned on

March 27, 2012 and entered a plea of not guilty.[6]

On August 6, 2012, the State filed a notice of intent to use other acts evidence.[7]  Toyer

filed a brief in opposition.[8]

---

[4] ECF Doc. 6-1 at Ex. 15
[5] ECF Doc. 6-1 at Ex. 1
[6] ECF Doc. 6-1 at Ex. 2
[7] ECF Doc. 6-1 at Ex. 3
[8] ECF Doc. 6-1 at Ex. 4

On September 14, 2012, the State filed a bill of particulars for the murder charge in

Count One.[9]  Also on September 14, 2012, the defense submitted his requested jury

instructions.[10]

Prior to trial, the State dismissed the involuntary manslaughter charge.[11]  The jury found

Toyer guilty of murder in violation of O.R.C. § 2903.02(B) and §2929.02.[12]  On September 26,

2012, the trial court sentenced Toyer to serve a term of 15 years to life in prison for the murder

conviction.[13]

## IV.    Direct Appeal

On October 18, 2012, Toyer, represented by new counsel, filed a timely notice of appeal

to the Sixth District Court of Appeals.[14]  In his merit brief, Toyer raised the following

assignments of error:

1. The admission of other-acts testimony violated Mr. Toyer's rights to Due
   Process and to a Fair Trial as guaranteed by the Constitution of the United
   States and the State of Ohio.

   A.  The threshold analysis for the admission of testimony regarding prior bad
   acts requires both a temporal and circumstantial connection between the prior
   acts and the underlying offense.  See *State v. Hawn,* 139 Ohio App.3d 449,
   461 (2nd Dist. 2000).  In this matter, the prior bad acts pre-date the underlying
   offense by, at a minimum, approximately one year.  The acts were,
   nonetheless, admitted.  Did the admission result in a deprivation of Mr.
   Toyer's rights to Due Process and a Fair Trial?

   B.  Evidence of other acts is inadmissible except under a few statutory
   conditions under Evid. R. 404(B).  But even these exceptions require the other
   acts to be *temporally* and *circumstantially*-related to the underlying offense.
   The other-acts evidence in this case failed to satisfy these requirements.  Was

---

[9] ECF Doc. 6-1 at Ex. 9
[10] ECF Doc. 6-1 at Ex. 10
[11] ECF Doc. 6-1 at Ex. 15
[12] ECF Doc. 6-1 at Ex. 11
[13] Id.
[14] ECF Doc. 6-1 at Ex. 12

it an abuse of discretion to admit such testimony?  And if so, was the error harmless beyond a reasonable doubt?

2.  The trial court violated Mr. Toyer's right to a fair trial as guaranteed by the Constitution of the United States and the State of Ohio by failing to instruct the jury on the lesser-included offense of reckless homicide.

A.  A trial court must give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as factfinder.  And when the evidence presented at trial, if believed by a properly instructed jury, would support an acquittal on one of the offenses and support a conviction on the lesser-included offense, the trial court must give the instruction on the lesser-included offense.  Here, there was evidence to support an acquittal on the murder charge and support a conviction on the lesser-included offense of reckless homicide.  The trial court erred by denying Mr. Troyer's request for a jury instruction on reckless homicide.

The State filed a brief opposing the assignments of error raised by Toyer.[15]  On September 26, 2014, the Sixth District Court of Appeals overruled Toyer's assignments of error and affirmed the judgment entry of the trial court.[16]  Toyer did not file a timely request for review by the Ohio Supreme Court.   His deadline to seek review of the court of appeals decision by the Ohio Supreme Court expired on November 10, 2014, forty-five days after the entry of judgment by the court of appeals.

## V.  Delayed Appeal to the Supreme Court of Ohio

On September 25, 2015, Toyer, *pro se,* filed a notice of appeal and motion for leave to file a delayed appeal.[17]  On November 10, 2015, the Supreme Court of Ohio denied Toyer's motion for leave to file a delayed appeal.[18]

---

[15] ECF Doc. 6-1 at Ex. 14
[16] ECF Doc. 6-1 at Ex. 15
[17] ECF Doc. 6-1 at Ex. 16
[18] ECF Doc. 6-1 at Ex. 21

**VI.    Ohio App. R. 26(B) Application for Reopening**

On December 23, 2014, Toyer, *pro se*, filed an application to reopen his direct appeal

pursuant to Ohio Appellate Rule 26(B) in the Sixth Circuit Court of Appeals, Lucas County,

Ohio.[19]  In his application, Toyer argued that he was denied the effective assistance of appellate

counsel for the following reasons:

1.  Appellate counsel was ineffective in failing to raise the issue of abuse of
    discretion for trial court not allowing full cross-examination of state's key
    witness during examination of that witness in violation of appellant's Sixth and
    Fourteenth Amendment rights to confront the witness against him.

2.  Appellate counsel was ineffective in failing to raise the issue of ineffective
    assistance of counsel where trial counsel failed to adequately or fully cross-
    examine a state witness in violation of Appellant's right to confrontation under
    the Sixth and Fourteenth Amendments of the United States Constitution.

3.  Appellate counsel was ineffective for failure to raise the issue of ineffective
    assistance of trial counsel for counsel's failure to hire an expert witness who
    have opined that the victim's death was an opposed to the state's expert
    witness who testified that the victim's death was murder.[20]

The state filed a brief in opposition to Toyer's 26(B) application.[21]  On February 11, 2015, the

Sixth District Court of appeals denied Toyer's 26(B) application to reopen after finding "no

genuine issue as to whether [Toyer] was denied the effective assistance of counsel."[22]  Toyer did

not file a timely request for review by the Ohio Supreme Court.   His deadline to seek review of

the court of appeals decision by the Ohio Supreme Court expired on March 28, 2015, forty-five

days after the entry of judgment by the court of appeals.

---

[19] ECF Doc. 6-1 at Ex. 18
[20] ECF Doc. 6-1 at Ex. 19
[21] ECF Doc. 6-1 at Ex. 20
[22] ECF Doc. 6-1 at Ex. 21

IV.     **Federal Habeas Corpus Petition**

On September 25, 2015, Toyer filed the instant *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In his petition, Toyer asserts the following grounds for relief:

GROUND ONE:  The trial court violated Petitioner's 14th amendment right to due
process equal protection of the laws and the right to a fair trial as guaranteed by the
united states constitution by allowing the admission of allegedly other acts as testimony
from the victim's sister where the (sic) had nothing to do with the offnes (sic).

SUPPORTING FACTS: The trial court admitted testimony by the victim's sister
of alleged prior incidents between the victim and petitioner, that had no
temporally nor circumstantial relation to the underlining (sic) offnes (sic) that
allegedly occurred a year prior to the offense.  The judge overruled on Petitioner's
Evid. Rule 403-404(B) objection to the admission of the evidence.

GROUND TWO:  The trial court violated Petitioner's 14th amendment right to a
fair trial as guaranteed by the constitution of the united states and the state of
Ohio by failing to instruct the jury on a lesser offense of murder.

SUPPORTING FACTS: The Petitioner was originally charged with murder and
involuntary manslaughter, but the Petitioner refused to plead guilty.  The state
dropped the manslaughter prior to trial.  The Petitioner and victim were in a
relationship, a dispute took place where the victim lunged into a knife, and passed
away from a single knife wound.  The Petitioner called 911 immediately after the
incident happened requesting medical attention for her.

GROUND THREE:  Appellate counsel was ineffective in failing to raise the issue
of abuse of discretion for trial court not allowing full cross-examination of state's
key witness during examination of that witness, in violation of appellant's 6th and
14th amendment rights to confront the witness against him.

SUPPORTING FACTS: The prosecution sought to have the victim's sister
testimony admitted as evidence to rebut the defense the incident was an accident.
Prior to cross-examination by the defense of Natiqua Triplett the trial court stated
I am not going to allow a full cross-examination.

GROUND FOUR:  Appellate counsel was ineffective in failing to raise the issue
of ineffective assistance of counsel where trial counsel failed to adequately or
fully cross-examine a state witness in violation of appellant's right to
confrontation under the 6th and 14th amendments of the united states constitution.

SUPPORTING FACTS:  Trial counsel never made any attempt to put before the jury any evidence of the witness bias, prejudice of the witness being bias, prejudice, or motive for testimony for the state.  Thus the jury was left with essentially unrebutted, untested testimony that Petitioner committed the acts and or that they happened the way the states' witness claimed they happened, insofar as this testimony was presented to the jury to rebut a Petitioner's defense of accident.  Trial counsel proved ineffective to prejudice the Petitioner by falling to contest testimony of the state's key witness.  Had trial counsel put before the jury evidence of Natiqua Triplett's bias, prejudice and reason for testifying for the state it is highly probable that the jury would not have found Petitioner guilty of murder the outcome would have been different.

GROUND FIVE:  Appellate counsel was ineffective for failure to raise the issue of ineffective assistance of trial counsel due to counsel failure to hire an expert witness to offer testimony that the single knife wound that caused the victim's death was an accident as opposed to the state's expert witness who testified that due to the knife wound it was not an accident but murder.

SUPPORTING FACTS:  The failure of trial counsel to call an expert witness in rebuttal fell below an objective standard of reasonable representation.  Trial counsel relied only on cross-examination to rebut testimony given by the prosecutor's expert witness, who testified that in her opinion the victim could not have run into the knife, held by the Petitioner.  Trial counsel's cross examination was totally incapable of rebutting the prosecutor's expert witness insofar that neither trial counsel had the technical skills or knowledge to rebut such an expert.  Without expert testimony the jury had only the testimony of the prosecutor's expert witness to draw their facts from.

I raised this issue in my 26B appeal due to ineffective assistance of appellate counsel, stemming from my direct appeal.  I was late in my appeal to the supreme court due to being in segregation and not being allowed to have access to my legal papers and once getting out my legal mail was sent out 6 days late making me 3 days late.

Respondent filed his motion to dismiss on November 19, 2105.  Petitioner has filed nothing in opposition to the motion to dismiss.

10

V.    **Applicable Law**

A.    **Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court."  A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d).  Defendant was sentenced by the Court of Common Pleas of Lucas County, which is within this court's geographic jurisdiction. Accordingly, this court has jurisdiction over petitioner's § 2254 petition.[23]

B.    **Statute of Limitations**

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody under a judgment of a state court must file an application for writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The United States Supreme Court has held that the direct review is generally viewed as including the ninety-day period for seeking certiorari.  *Perry v. Lynaugh*, 492 U.S. 302, 314 (1989).  Thus,

---

[23] ECF Doc. 6-1 at Ex. 11

cases will become final on direct review for purposes of § 2244(d)(1)(A) when certiorari is denied or time to file a certiorari petition expires.

The standard start date for the one-year statute of limitations comes from 28 U.S.C. § 2244 (d)(1)(A).  Toyer's conviction became final forty-five days after the Sixth District Court of Appeals affirmed his conviction or on November 10, 2014.[24]  Thus, Toyer's federal habeas petition is timely and respondent has not raised any argument to the contrary.[25]

### C.    Exhaustion

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction by means of federal habeas corpus. *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition. See *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander,* 912 F.2d 878, 881-883 (6th Cir. 1990).

### D.    Procedural Default

A federal court may not review "contentions of federal law… not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes,* 443 U.S. 72, 87 (1977).   When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule,

---

[24] ECF Doc. 6-1 at Ex. 15
[25] ECF Doc. 6 at p.9

federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); see also *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

If the State argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule… Second, the court must decide whether the state courts actually enforced the state procedural sanction… Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim… This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate. . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

### E.    Cognizable Federal Claim

A federal court's consideration of a petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See e.g. Wainwright v. Goode*, 464 U.S. 78, 84 (1983). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen,* 845 F.2d at 614, quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985).

### F.    Actual Innocence

In *Schlup v. Delo*, 513 U.S. 298, 314-315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the Supreme Court held that a habeas petitioner who makes a "colorable showing of actual innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have "otherwise barred constitutional claim[s] considered on the merits." This exception is concerned with actual, as opposed to legal, innocence and must be based on reliable evidence not presented at trial. *Schlup,* 513 U.S. at 324; *Calderon v. Thompson,* 523 U.S. 538, 559 (1998). In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup,* 513 U.S. at 324.

## VI.   Analysis

### A.    Grounds One and Two

#### 1.    Procedural Default – Failure to File Timely Petition with Ohio Supreme Court

In Ground One of his petition, Toyer contends that his 14th Amendment rights to due process and equal protection were violated when the trial court admitted testimony of other bad

acts. In Ground Two, Toyer contends that the trial court violated his 14th Amendment right to a fair trial by failing to instruct the jury on a lesser included offense of murder, reckless homicide. Toyer previously asserted the arguments raised in Grounds One and Two in his direct appeal to the 6th District Court of Appeals.  However, he did not file a timely appeal with the Supreme Court of Ohio.  Respondent argues that Toyer procedurally defaulted on these claims when he failed to file a timely appeal to the highest court in Ohio.  As stated above, the court is required to apply the *Maupin* test to determine whether Toyer's claims are procedurally defaulted.

Under Ohio S. Ct. R. II § 2(A)(1)(a), a party has 45 days from the entry of judgment to file a notice of appeal.  The requirement of filing a timely appeal is an applicable rule of procedure which Toyer failed to follow.  The Supreme court enforced this procedural sanction when it denied Toyer's leave to file a delayed appeal.  The denial of a motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of the petitioner's habeas corpus petition.  *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004)  Thus, that procedural rule has been deemed to be an adequate and independent state ground for barring review.  *See Coleman v. Thompson,* 501 U.S. 722, 740 (1991); *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).

Because Toyer failed to comply with the procedural rule of filing a timely appeal, he must demonstrate that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  In order to establish cause, a habeas corpus petitioner must show that "some objective factor external to the defense" prevented the petitioner's compliance with a state procedural rule. *Bonilla,* 370 F.3d at 498, citing *Murray v. Carrier,* 477 U.S. 478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986).

15

In his petition, Toyer claims that he was put in segregation and denied access to his legal material.  He claims that once he was released, he put his appeal in the institution mail box and it took 6 days to send the mail out, which was 3 days past the due date.  As acknowledged by respondent, the Sixth Circuit has found cause and prejudice to excuse a procedural default when a prisoner gives his filing to prison officials for mailing five days before the deadline but the filing arrives in the state court after the deadline and is deemed untimely.  *Henderson v. Palmer,* 730 F.3d 554 (6th Cir. 2013); *Foster v. Warden, Chillicothe Corr. Inst.,* 575 Fed. Appx. 650 (6th Cir. 2014).  Thus, according to Sixth Circuit precedent, Toyer has demonstrated cause and prejudice excusing his procedural default for failing to file a timely petition with the state's highest court.

Respondent's attempt to distinguish the aforesaid Sixth Circuit precedent is not persuasive.  Respondent argues that Toyer's decision to use "jailhouse lawyers" to prepare his filings does not establish cause.  Respondent also contends that Toyer's placement in segregation is not an objective factor external to his defense.  Even if the court were to find that these arguments were compelling, they do not alter the fact that Toyer submitted his petition for filing six days prior to the deadline.  It is irrelevant that Toyer used jailhouse lawyers and was in segregation.  His submission of his petition to the institution's mail box six days prior to the filing deadline has been determined to establish cause and prejudice for purposes of a procedural default analysis.  Thus, the undersigned recommends that the court find that Toyer has demonstrated cause and prejudice excusing his failure to file a timely petition with the Ohio Supreme Court challenging the denial of his direct appeal.  However, as explained below, Toyer waived Grounds One and Two of his petition by failing to fairly present the federal aspect of these grounds to the state court in his direct appeal.

16

### 2.     Procedural Default – Failing to Present Federal Claim to State Court

Respondent also contends that Grounds One and Two are defaulted because Toyer failed to fairly present his federal claims to the state courts.  Before seeking federal habeas relief, state prisoners must first exhaust their available state court remedies by fairly presenting all their claims to the state courts. *Whiting v. Burt,* 395 F.3d 602, 612 (6th Cir. 2005).  Ordinarily, the exhaustion requirement is satisfied once the petitioner has fairly presented all his claims to the highest court in the state in which he was convicted, thus giving the state a full and fair opportunity to rule on those claims before the petitioner seeks relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).  In reviewing the state court proceedings to determine whether a petitioner has "fairly presented" a claim to the state courts, courts have looked to the petitioner's:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).  While a petitioner need not cite "chapter and verse" of constitutional law, " general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (internal citations omitted).

In his direct appeal, Toyer argued that the admission of other acts testimony violated his rights to due process and a fair trial as guaranteed by the Constitution of the United States and the State of Ohio.  While he did make a fleeting reference the United States Constitution in his direct appeal, Toyer did not rely on any federal cases or point to any specific constitutional violation or other federal law that would have alerted the state court to the nature of his federal

claim.  He did not phrase the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or allege facts well within the mainstream of constitutional law.  The Sixth Circuit has held that general allegations like the ones made in Toyer's direct appeal do not fairly present the substance of a federal claim to a state court.  *See Beach v. Moore,* 343 Fed. Appx. 7, 2009 U.S. App.LEXIS 18298 (6th Cir. 2009) citing *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006).

Toyer made similar general allegations on direct appeal related to the argument now asserted in Ground Two.  He argued that "the trial court violated his right to a fair trial as guaranteed by the Constitution of the United States and the State of Ohio by failing to instruct the jury on the lesser included offense of reckless homicide."   As with the issue involved in Ground One, Toyer failed to properly present the federal grounds of his claim to the state court and thereby waived his ability to present those claims to this court.

Toyer cannot now remedy his failure of presenting his federal claims to the state courts.  Ohio law does not allow prisoners to raise for the first time on collateral review a claim that could have been brought on direct appeal.  *See State v. Szefcyk,* 77 Ohio St.3d 93, 1996 Ohio 337, 671 N.E.2d 233, 235 (1996).  Accordingly, since no state remedies are available to Toyer at this time, procedural default bars federal review of Grounds One and Two in his petition.

A federal court may consider an otherwise barred claim if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. *Coleman v. Thompson,*  501 U.S. 722, 749-750 (1991).  This ordinarily turns on "whether the prisoner can show that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule."  *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Regarding Grounds One and Two, Toyer asserts that he has cause for failing to timely file a

18

petition with the Ohio Supreme Court and, as explained above, the undersigned recommends that that the court find that he has established cause and prejudice for that procedural default. However, Toyer has not argued any cause for his failure to present his federal issues to the state court on direct appeal, nor does it appear that any cause exists.  Grounds One and Two involve issues that are typically governed by state law.  Apart from general allegations, Toyer did not argue that the issues involved in Grounds One and Two related to any specific federal law or constitutional provision.  He has not demonstrated cause for failing to fairly present the federal nature of his claims to the state court.  Toyer has also failed to show pervasive actual prejudice or that he was denied "fundamental fairness" at trial.  *Murray* 477 U.S. at 494.

Finally, Toyer has not presented any new evidence of actual innocence in this case. *Schlup,* 513 U.S. at 324.  Thus, the undersigned finds that there is no basis for excusing Toyer's procedural default in failing to fairly present the federal issues of Grounds One and Two of his petition to the state court.  The undersigned recommends that these grounds be dismissed on that basis.

### 3.      Non-Cognizable Claims

Respondent also contends that Grounds One and Two are non-cognizable as they do not present federal claims.  Ground One of Toyer's petition involves the trial court's admission of "other acts" evidence at trial.  Ohio law permits other acts evidence to be admitted for the purpose of proving motive, opportunity intent, preparation, scheme, plan, system, knowledge, identity, or absence of mistake or accident. O.R.C. § 2945.59; Ohio Evid. R. 404(B).

Prior to the trial, the trial court conducted a voir dire of proposed witness, Natiqua Triplett, the victim's sister.  Triplett testified regarding two prior occasions where she witnessed Toyer and the victim arguing.  After much debate, the trial court allowed the testimony as

evidence of the turbulent relationship between the parties and to rebut Toyer's claim that the stabbing was accidental.  Following Triplet's testimony, the trial court instructed the jury as follows:

> You just heard evidence regarding the commission of other acts by this defendant. This evidence was received only for a very limited purpose.  It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with the purported character.  If you find that the evidence of these other acts is true and that the defendant actually committed these other acts, you may consider that evidence only for the limited purpose of deciding whether it proves the absence of mistake, or accident or as to the defendant's motive regarding the commission of the offense that he is charged with as to this trial.  You may not consider this evidence as to the testimony you just heard for any other purpose.

The state appellate court rejected Toyer's argument that the trial court had abused its discretion by admitting the testimony of prior bad acts.  The court of appeals noted that other acts were admissible to show an absence of accident, Toyer's defense at trial.  The court of appeals also cited case law holding that prior acts may be admissible to establish the immediate background for an incident.  The court of appeals further held that the other acts evidence presented at trial was sufficiently related temporally and circumstantially to the incident to justify the admission of the evidence.  In making these determinations, the court of appeals applied state law and determined that the trial court had not abused its discretion.

Errors in application of state law, especially with regard to the admissibility of evidence are usually not cognizable in federal habeas corpus.  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.)  The admission of other acts evidence at Toyer's trial involved the application of state law, which is not cognizable in a federal habeas petition.

As indicated above, Toyer did not fairly present the federal nature of this claim in the state courts.  However, even if he had, an evidentiary ruling at trial usually does not rise to the level of a due process violation. *See Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993).

"Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend [] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F.3d 542, 552.  In *Bugh v. Mitchell,* 329 F.3d 496, 2003 U.S. App. LEXIS 9124, the Sixth Circuit held that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Id*. at 512.  Thus, under AEDPA, Toyer's claim regarding the admission of other acts testimony at trial is not a cognizable claim in a habeas proceeding.

Ground Two of Toyer's petition relates to the trial court's failure to instruct the jury on a lesser offense of murder.  Challenges related to jury instructions rarely rise to the level of federal constitutional violations, but such challenges may be considered in a federal habeas action if erroneous jury instructions deprived a petitioner of a fundamentally fair trial.  See *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 97 S. Ct. 1730 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986).  In *Bagby v. Sowders,* 894 F.2d 792, 1990 U.S. App.LEXIS 484, the Sixth Circuit considered whether the failure to instruct the jury on a lesser included offense resulted in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.  *Bagby,* 894 F.2d at 797.  The court held that such a failure was not an error of such a character and magnitude to be cognizable in federal habeas corpus review.  *Id.*

Even if a cognizable federal issue had been raised, it does not appear in this case that the trial court erred in choosing not to instruct the jury on a lesser included offense.  In considering this issue, the court of appeals reasoned,

> As to a requested jury charge of a lesser included offense, it is required "only where the evidence presented at trial would reasonably support  both an acquittal of the crime charged and a conviction upon the lesser included offense.  * * *

The lesser-included-offense instruction is not warranted every time "some evidence" is presented to support the lesser offense.  Rather, a court must find "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." * * * In determining whether to give the requested instruction, the court must view the evidence in a light most favorable to the defendant.  * * *

Reviewing appellant's arguments, we are guided by a factually similar case from the Twelfth Appellate District.  In *State v. Wyatt, * * ** the defendant was charged with shooting and killing his wife.  The defendant claimed that the shooting was accidental; other acts of violence against the victim were admitted to show that the shooting was intentional.  The defendant requested that the trial court instruct the jury on the lesser included offense of reckless homicide.  The court refused.

The appellate court first explained that the claim of accident is an unwilled act lacking criminal culpability.  The court then noted:

> Reckless conduct goes beyond what is considered to be an accident.  In turn, by claiming that the shooting was purely accidental, any argument advanced by appellant claiming culpability for his wife's death, but only to a lesser extent, was wholly inconsistent with his theory of the case.[26]

(internal citations omitted.)

Moreover, even if Toyer *could* show that the trial court erred in refusing to give the lesser included offense instructions, the Sixth Circuit has determined that such an error in noncapital cases does not present a federal issue cognizable in § 2254 habeas proceedings.  *Bagby,* 894 F.2d at 797.  Thus, Toyer's claim regarding the trial court's refusal to instruct the jury on a lesser included offense is not a cognizable claim in a federal habeas proceeding.

The undersigned recommends that Grounds One and Two of Toyer's petition be dismissed because he procedurally defaulted by failing to fairly present his federal claims in state court and because these grounds do not state cognizable claims.

---

[26] ECF. Doc. 6-1 at Exhibit 15, ¶¶ 33-36.

**B.**     **Grounds Three through Five**

Grounds Three, Four and Five of Toyer's petition raise issues that were previously raised in an Ohio Appellate Rule 26(B) application.  The Sixth District Court of Appeals denied Toyer's application in an entry dated February 11, 2015.  Toyer did not appeal that decision to the Ohio Supreme Court and is no longer permitted to do so because Ohio Supreme Court Rule of Practice 7.01(A)(4)(c) provides that the provision for delayed appeals does not apply to appeals involving postconviction relief or appeals brought pursuant to App.R.26(B).  Respondent argues that Toyer has procedurally defaulted on Grounds Three through Five.

The court is required to apply the *Maupin* test to determine whether Toyer's claim is procedurally defaulted.  The arguments asserted in Grounds Three through Five of Toyer's petition were not appealed to the Ohio Supreme Court.  By failing to present these issues to the state's court of last resort, Toyer failed to exhaust his remedies as to those claims.  *O'Sullivan v. Boerckel,* 526 U.S. 838, syllabus.  Because the deadline for filing an appeal on the denial of his 26(B) application has expired and because the Ohio Supreme Court Rules of Practice do not allow for delayed appeals on 26(B) applications, Toyer has procedurally defaulted on these grounds. *O'Sullivan* 526 U.S. at 848.  This is an adequate and independent state ground.  See *Lordi v. Ishee,* 384 F.3d 189,194, 2004 Ohio App.LEXIS 19040 (6th Cir. 2004).  Because Toyer was required to present these claims to the Ohio Supreme Court to satisfy the exhaustion requirement, but is now barred from doing so due to Ohio's procedural rule, the second requirement that the state courts actually enforced the procedural rule is fulfilled.  *O'Sullivan* 526 U.S. at 848, citing *Coleman v. Thompson,* 501 U.S. 722, 735, 115 L.Ed.2d 640, 111 S.Ct. 2546 (1991).

Because Toyer failed to appeal the denial of his 26(B) application to the Ohio Supreme Court and thereby procedurally defaulted on Grounds Three through Five, he is required to demonstrate both cause and prejudice in order to present these issues in the context of a habeas corpus petition. *Coleman*, 501 U.S. at 749-750. This "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis of a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under the standard." *Murray v. Carrier*, 477 U.S. at 488 (1986).

Toyer has not demonstrated any cause for failing to raise Grounds Three, Four and Five in an appeal to Ohio's court of last resort. In his petition, Toyer asserts that he defaulted on Grounds Three through Five for the same reasons asserted as cause for defaulting on Grounds One and Two. However, while those reasons related to the petition Toyer attempted to file on his direct appeal, they do not relate to his failure to appeal his 26(B) application. As respondent points out, Toyer's segregation and delayed mail filing in November 2014 did not affect his failure to file a timely appeal to the Ohio Supreme Court in March 2015. Toyer has not alleged or shown any cause for his failure to file a timely appeal of his 26(B) application.

Regarding the "prejudice" component, the Supreme Court has indicated that "[t]he habeas petitioner must show not merely that the errors … created a possibility of prejudice, but that they worked to his actual and substantial disadvantage infecting his entire trial with error of constitutional dimensions. Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at

24

trial." *Murray,* 477 U.S. at 494.  Toyer has not demonstrated cause or prejudice and the *Maupin* criteria have been satisfied as to Counts Three through Five.

The court is also required to consider whether petitioner's procedural default on these grounds should be excused because the alleged constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496.  Toyer has not presented any new evidence of actual innocence and there is no basis for excusing his procedural default on Grounds Three through Five of his petition.  For these reasons, the undersigned recommends that the Court dismiss Grounds Three through Five.

### C.    Recommendation Regarding Certificate of Appealability

#### 1.    Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463

U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The

statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. §

2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts,

28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. §

2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of

appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny

the certificate of appealability at the time of its final adverse order, a recommendation regarding

the certificate of appealability issue is included here.

### 2.    Analysis

Where, as here, a petition is to be dismissed on a procedural basis, the inquiry under §

2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner

shows, at least, that jurists of reason would find it debatable whether the petition states a valid

claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis

added).  As the Court explained, "[w]here a plain procedural bar is present and the district court

is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the

district court erred in dismissing the petition or that the petitioner should be allowed to proceed

further.  In such a circumstance, no appeal would be warranted."  *Id*. at 486.

If the Court accepts the foregoing recommendation, Toyer cannot show that the Court's

rulings on the procedural defaults of his petition are questionable.  As noted above, Toyer

procedurally defaulted on all of the arguments raised in his petition.  Additionally, Grounds One and Two present claims that are non-cognizable under 28 U.S.C. § 2254(a).  Thus, since the procedural default of the issues raised in Toyer's petition are not reasonably debatable, the undersigned recommends that no certificate of appealability issue as to Toyer's petition.

## VII.   Conclusion

For the reasons stated herein, the undersigned recommends that the court dismiss each of the grounds asserted in Toyer's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

Dated: June 30, 2016

Thomas M. Parker
U.S. Magistrate Judge

## VIII.  Notice to Parties Regarding Objections:

Local Rule 73.2 of this court provides:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and

27

Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).